UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

WAYNE BAILEY,                          :
                                       :
                Plaintiff,             :
                                       :
v.                                     :     ACTION NO. 2:13CV333
                                       :
CITY OF CHESAPEAKE,                    :
KEVIN L. WRIGHT,                       :
DOUG N. DRAPER,                        :
                                       :
                Defendants.            :

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Following his separation from the Chesapeake Police Department Auxiliary ("CPD"), Plaintiff Wayne Bailey ("Bailey") filed this lawsuit raising four counts: (I) a denial of procedural due process under the Fourteenth Amendment; (II) violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(a); (III) violations of the Genetic Information Nondiscrimination Act ("GINA"), 42 U.S.C. § 2000ff-1(b); and (IV) tortious interference with his prospective business relations. Id. at 8-11. Defendants, City of Chesapeake, Kevin Wright, and Doug Draper (collectively, "Defendants"), argue that Bailey has failed to state any claim for relief. The matter was referred to the undersigned Magistrate Judge for a Report and Recommendation. For the reasons set forth in detail below, the undersigned recommends that Defendants' Motion to Dismiss be granted.

1

## FACTUAL AND PROCEDURAL HISTORY

As set forth in the Complaint and presumed true for purposes of this Motion, Bailey served for approximately nine years as an auxiliary police officer with the CPD. (ECF No. 1 at 4). He reportedly served with distinction, earning numerous accolades and compiling no disciplinary record. Id. at 4, 5. In November, 2012, an annual physical examination conducted by Dr. Heidi Kulberg, revealed a genetic disorder that might affect his ability to perform the job. Id. at 5-7.

In fact, Bailey suffered from the same genetic disorder throughout his enrollment with the CPD. Id. at 4-5. While his condition had never before been an "adverse factor," it re-surfaced during Dr. Kulberg's annual exam. According to the Complaint, changes in departmental health standards now disqualified Bailey from further service as an auxiliary officer because of his medication. Id. at 5. For purposes of this Motion, Defendants do not dispute that Bailey suffered from a genetic disorder, nor that they were aware of his condition at the time of his separation.

Although Dr. Kulberg initially advised Bailey his medication would disqualify him from service, following a discussion with Bailey, she effectively bypassed the new standards and determined, with a "good and clear conscience," that Bailey was "able to perform all required job tasks as an

2

Auxiliary Officer." Id. at 6.   Dr. Kulberg's decision, however, raised some concerns within the department.   After learning about the medication issue, Bailey's supervisor, Jerry Ashley, informed him that the "higher-ups were upset," and that he was to refrain from wearing his uniform or badge, carrying a gun, or otherwise acting in any kind of law enforcement capacity.   Id.

On February 1, 2013, a sergeant visited Bailey's home while Bailey was attending a conference call at work, and asked his wife to have Bailey contact him on his return.   Id.   Feeling "harassed, embarrassed and humiliated," Bailey resigned from the CPD on the same day.   Id. at 6-7.   On February 4, 2013, however, CPD Chief Kevin Wright informed Bailey that his resignation had been rejected, he was the subject of an internal investigation, and he was retroactively terminated effective February 1, 2013. Id. at 7.

Bailey later met with a detective, and indicated that he resigned because he felt that his privacy had been compromised and that Wright was unfairly sharing his genetic condition with others in order to harass him.   Id.   The detective, in turn, informed Bailey that Bailey effectively lied to the CPD by not informing them that he was medically disqualified from service. Bailey responded that his condition had remained the same throughout his service and had never before been an adverse factor.   Id.

In May 2012, Bailey decided to apply for a position with the Portsmouth Auxiliary Police.[1]  <u>Id.</u>  Though he apparently had a good interview, Bailey failed his background check and ultimately was not offered a position with the department. According to the Complaint, Bailey failed the background check after the Portsmouth Auxiliary authorities spoke with CPD Captain Doug Draper.

Bailey initiated this lawsuit on June 14, 2013.  (ECF No. 1).  Defendants moved to dismiss all four counts.  (ECF No. 4). Bailey responded (ECF No. 6), Defendants replied (ECF No. 7), and neither party requested oral argument.  Defendants' Motion to Dismiss is therefore ripe for judicial review.

## <u>STANDARD OF REVIEW</u>

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A pleading fails to meet this standard and is subject to dismissal under Rule 12(b)(6) when it does not "contain sufficient factual matter, accepted as true, 'to state a claim that is plausible on its face.'"  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the plaintiff pleads

---

[1] Bailey's Complaint alleges that he applied to the Portsmouth Auxiliary Police in May of 2012, approximately six months prior to Dr. Kulberg's examination.  While this may be a typographical error, the correct date is not critical to the undersigned's analysis.

4

factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

"Factual allegations must be enough to raise a right to relief above the speculative level" and beyond the level that is merely conceivable. Twombly, 550 U.S. at 555. Legal conclusions and "threadbare recitals of the elements of a cause of action" do not state a claim. Iqbal, 556 U.S. at 678. A Rule 12(b)(6) motion, then, should be granted if, "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999). This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

**ANALYSIS**

A. **Due Process Claims**

Count I asserts a claim against Defendant Wright individually and in his official capacity as the Chief of the CPD based on alleged violations of Bailey's Fourteenth Amendment due process rights. (ECF No. 1 at 8). Specifically, Bailey

5

argues that because he had a property right in his position with the CPD, he was entitled to procedural fairness prior to his retroactive termination.   Defendants first counter that Bailey's failure to proceed under 42 U.S.C. § 1983 precludes any recovery on this claim.   Further, as a volunteer, Defendants argue Bailey had no constitutionally cognizable property interest on which to proceed.   Lastly, Defendants argue, even if Bailey has stated a viable Fourteenth Amendment claim, Defendant Wright is entitled to qualified immunity.

As an initial matter, "Section 1983 is the procedural mechanism through which Congress provided a private civil cause of action based on allegations of federal constitutional violations by persons acting under color of state law."   Harley v. Stevenson, CA 3:12-2217-RBH-JRM, 2012 WL 4791035 at *2 (D.S.C. Aug. 30, 2012) report and recommendation adopted, CA 3:12-2217-RBH, 2012 WL 4791015 (D.S.C. Oct. 5, 2012) (citing Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 731-32 (1989)). Because there is no direct cause of action under the Fourteenth Amendment, Bailey's constitutional claims against Defendant Wright should have been alleged under Section 1983.   They were not.   As this defect may be easily cured by amendment, however, Bailey's allegations against Defendant Wright are addressed in more detail below.

Even had Bailey properly alleged Count I under Section

1983, he has no constitutionally protected interest on which to proceed:

> The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. When protected interests are implicated, the right to some kind of prior hearing is paramount. But the range of interests protected by procedural due process is not infinite.

Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 569-70 (1972). Here, Bailey has failed to allege a valid property or liberty interest in his voluntary position with the CPD, and accordingly, the requirements of procedural due process were not implicated. See Harrison v. U.S. Postal Service, 840 F.2d 1149, 1152 (4th Cir. 1988) (the first step in analyzing a due process claim is determining whether plaintiff has a liberty or property interest).

"In the context of property interests in employment, an employee must have '. . . a sufficient expectancy of continued employment to constitute a protected property interest.'" Sherman v. City of Richmond, 543 F. Supp. 447, 450 (E.D. Va. 1982) (quoting Bishop v. Wood, 426 U.S. 341, 344 (1977)). The law in this Circuit is unclear as to whether an unpaid volunteer enjoys any sort of property interest in their continued service, and indeed, Bailey has failed to direct the Court to anything in support of his position that they do. See e.g., Berg v. Commander, Fifth Coast Guard Dist., 810 F. Supp. 703, 714 (E.D.

Va. 1992) (holding that "even if Berg had a property interest in continued membership in the [volunteer] Auxiliary, the disenrollment process satisfied" his due process rights); Forrester v. Prince George's Cnty., Md., 919 F.2d 734, at *2 (4th Cir. 1990) (unpublished) ("Even assuming that appellants have some sort of property interest in their volunteer positions, we hold that they were accorded due process.").

The Supreme Court has specified, however, that the requirements of due process do not apply when the alleged property interest involved is "de minimis." See Gross v. Lopez, 419 U.S. 565, 576 (1975). See also Sardin v. Conner, 515 U.S. 472, 499 (1995). In Versarge v. Township of Clinton, 984 F.2d 1359, 1370 (3d Cir. 1993), the Third Circuit determined that Versarge had no property interest in his position as an unpaid volunteer firefighter because the alleged benefits he received – training, worker's compensation, and access to the firehouse – were de minimis. Here, Bailey has alleged no benefits whatsoever in connection with his service as an auxiliary officer. He has not indicated any sort of compensation – monetary or otherwise – other than a vague assertion that he has suffered "severe emotional and economic damages to date and going forward into the future." (ECF No. 1 at 8).

By statute, auxiliary officers in the CPD are barred from receiving compensation, see Chesapeake, Va., Code § 42-31.

Absent any allegation of fact to the contrary, the undersigned recommends the Court find that any economic benefit Bailey may have received from his volunteer service on the CPD Auxiliary was de minimis. As a result, he has not alleged a constitutionally cognizable property interest in his continued volunteer service.

Additionally, Bailey alleges no violation of any liberty interest he may have held in his position with the CPD. As with property interests, the liberty interests a volunteer may hold in such a position are even less certain under existing Fourth Circuit precedent. With regard to reputational injuries, the court has recognized that "a Fourteenth Amendment 'liberty interest is implicated by public announcement of reasons for an employee's discharge.'" <u>Sciolino v. City of Newport News</u>, 480 F.3d 642, 646 (4th Cir. 2007) (quoting <u>Johnson v. Morris</u>, 903 F.2d 996, 999 (4th Cir. 1990)). To state such a claim, Bailey would have had to allege that the charges against him: "(1) placed a stigma on his reputation; (2) were made public by the employer; (3) were made in conjunction with his termination or demotion; and (4) were false." <u>Id.</u> Further, "a plaintiff must demonstrate that his reputational injury was accompanied by a state action that 'distinctly altered or extinguished' his legal status if he wants to succeed." <u>Shirvinski v. U.S. Coast Guard</u>, 673 F.3d 308, 315 (2012). Bailey alleged none of the elements

9

of a protected liberty interest in reputation.

Because Bailey has alleged no facts in his Complaint to establish a violation of any liberty interest, and because he does not possess a constitutionally cognizable property interest, he has not stated a claim for relief under Count I.

Finally, even if there were a cognizable liberty or property interest in Bailey's voluntary position with the CPD's auxiliary police program, the due process rights he asks the Court to infer were not "clearly established," and Defendant Wright would therefore be entitled to qualified immunity. See Ridpath v. Bd. of Governors Marshall Univ., 447 F.3d 292, 306 (2006). Qualified immunity "shields government officials performing discretionary functions from personal-capacity liability for civil damages under § 1983, 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Id. (quoting Wilson v. Layne, 526 U.S. 603, 609 (1999)).

In determining whether a defendant is entitled to qualified immunity, the courts have developed a two-part test. Saucier v. Katz, 533 U.S. 194, 200 (2001); Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 301 (4th Cir. 2004). First, the court must determine whether the facts alleged by the injured party show that the government official's actions violated the injured

party's constitutional rights. Saucier, 533 U.S. at 201;
Parrish, 372 F.3d at 301. If the court concludes that no
constitutional right was violated, there is no need to continue
through the remainder of the inquiry into qualified immunity.
Saucier, 533 U.S. at 201. The second step involves determining
whether the right was clearly established at the time of the
alleged conduct. Id.; Parrish, 372 F.3d at 301. This two-step
sequence, "while often appropriate," is not mandatory, and
courts may exercise discretion in deciding which prong to
address first. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

As discussed above, Bailey has failed to establish any
constitutionally protected liberty or property interest affected
by Wright's action. To the extent his position implicated
precedent which assumed the existence of a protected interest,
the alleged constitutional rights he held as an auxiliary
officer were not "clearly established." Consequently, Defendant
Wright is entitled to qualified immunity. See id. at 245
(holding that because "the unlawfulness of the officers' conduct
in this case was not clearly established, petitioners are
entitled to qualified immunity.").

B.  **Claims under the ADA and GINA**

Defendants also move to dismiss both statutory claims
because Bailey was not a member of the class of people protected
by the ADA and GINA. (ECF No. 5 at 3). Specifically, Bailey –

as a volunteer auxiliary officer - was not an "employee" as defined in either of those acts.[2] In response, Bailey contends that the determination as to whether he was an "employee" is a factual question that should be pursued in discovery. (ECF No. 6 at 5).

In 2005, this Court decided an almost identical question in Blankenship v. City of Portsmouth, 372 F. Supp. 2d 496 (E.D. Va. 2005). After examining Fourth Circuit precedent regarding whether volunteers could be considered employees, the Court determined that because Blankenship was a volunteer auxiliary deputy sheriff who received no monetary benefits or other compensation by virtue of his position, he did not qualify as an "employee" under the Age Discrimination in Employment Act.[3] Id. at 501. See also Haavistola v. Cmty. Fire Co. of Rising Sun, 6 F.3d 211 (4th Cir. 1993) (recognizing compensation as an important factor in distinguishing between "employee" and "volunteer," and remanding to the district court for the fact-finder to decide whether Haavistola's benefits from the fire department qualified as "compensation"). Likewise, then, the compensatory nature of any benefit Bailey received due to his

---

[2] Bailey has specifically alleged "unlawful employment practices" under Section 102(a) of the ADA, and 202(b) of GINA. 42 U.S.C. § 12112(a); 42 U.S.C. § 2000ff-1(b). Both the ADA and GINA define "employee" as "an individual employed by an employer." See 42 U.S.C. § 12111(4); 42 U.S.C. § 2000ff(2)(A)(i) (referencing the definition of "employee" contained in 42 U.S.C. § 2000e(f)).
[3] The substance of the ADEA's definition of "employee" is identical to the definitions in both the ADA and GINA. See 29 U.S.C. § 630(f).

status with the CPD is important.

Because Virginia adheres to the "Dillon Rule" of strict construction, local public bodies may only exercise those powers conferred by the state legislature expressly or by necessary implication. Commonwealth v. Cnty. Bd. of Arlington Cnty., 217 Va. 558, 573-74, 232 S.E.2d 30, 40 (1977). As this Court in Blankenship observed, "[t]here is no legislative authorization in Virginia for localities to pay wages to an auxiliary police force, only authorization to 'make such appropriations as may be necessary to arm, equip, uniform and maintain such auxiliary police force.'" Blankenship, 372 F. Supp. 2d at 499 (quoting Va. Code Ann. § 15.2-1732 (2004)).

Here, Bailey has alleged nothing to indicate that he has received any sort of compensation from the CPD, "such as a state-funded pension, survivor's benefits, scholarships, or any other direct or indirect remuneration." Id. at 500. Indeed, Chesapeake's City Code makes it clear that "[a]uxiliary police shall not receive compensation from the city for services rendered while serving as special police." Chesapeake, Va., Code § 42-31. As Bailey, like Blankenship, has received no compensation from his position in the volunteer auxiliary police force, he does not qualify as an "employee" under either the ADA or GINA. His Complaint asserts only "unlawful employment practices" under both acts. Accordingly, Bailey has failed to

13

state a claim for relief, and the undersigned recommends these claims be dismissed.

### C. Tortious Interference Claim

Defendants additionally contend that Bailey's attempt to continue his service as an auxiliary police officer lacks any probability of future economic benefit, and accordingly, he cannot sustain his claim of tortious interference. Bailey counters that he has properly alleged the requisite elements to maintain this claim. Specifically, Bailey argues that Defendants improperly interfered with a prospective business relationship, presumably his application to the Portsmouth Auxiliary Police.

In Virginia, the following elements are necessary to establish a prima facie case of tortious interference with existing and prospective business relations:

> (1) the existence of a business relationship or expectancy, with a probability of future economic benefit to [Bailey]; (2) [Defendants] knowledge of [Bailey's] business relationship or expectancy; (3) intentional interference by [Defendants] inducing or causing a breach or termination of [Bailey's] business relationship or expectancy; and (4) damages to [Bailey]."

X-IT Products, LLC v. Walter Kidde Portable Equip., Inc., 155 F. Supp. 2d 577, 652 (E.D. Va. 2001) (citing Chaves v. Johnson, 230 Va. 112, 120, 335 S.E.2d 97, 102 (1985); Glass v. Glass, 228 Va. 39, 51-52, 321 S.E.2d 69, 77 (1984)). Additionally, the first and third elements must meet an objective test, "and 'mere proof

14

of a plaintiff's belief and hope that a business relationship will continue is inadequate . . . .'" Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 228 (4th Cir. 2004) (quoting Commercial Bus. Sys., Inc. v. Halifax Corp., 253 Va. 292, 484 S.E.2d 892, 896 (1997)). Moreover, "a plaintiff must establish a *probability* of future economic benefit, not a mere possibility." Id. (internal quotations omitted).

Here, Bailey has failed to plead facts sufficient to plausibly establish a probability of – or even the potential for - future economic benefit. The only specific opportunity alleged is Bailey's 2012 application to the Portsmouth Auxiliary Police. The Complaint fails to allege any improper interference with this application, which was apparently rejected months before his medical exam and separation from the CPD. While his Complaint alleges more generally that Defendants were aware that he had a reasonable expectation of "entering into another business relationship . . . with the probability of future economic benefits," these statements are conclusory in nature and fail to establish a necessary element of the claim "beyond the level that is merely conceivable." Twombly, 556 U.S. at 178. Additionally, as in Chesapeake, Portsmouth's City Code emphasizes that "members of the auxiliary police force shall serve as such without compensation . . . ." Portsmouth, Va., Code § 27-27. Because the Portsmouth auxiliary position is the

only fact alleged which could be related to Bailey's tortious interference claim, the statutory prohibition of economic benefit fatally undermines his claim in Count IV. Thus, the undersigned recommends the Court dismiss this claim.

## RECOMMENDATION

For the foregoing reasons, the undersigned finds that Bailey has not alleged facts sufficient to plausibly establish his claims for relief, and therefore recommends the Court GRANT the Defendants' Motion to Dismiss.

## REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.   Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this Report to the objecting party, 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

2.   A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file

16

timely objections to the findings and recommendations set forth above will result in waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
October 16, 2013